**LARSEN et al. v. WRIGHT & COBB LIGHTERAGE CO.**

**KNUDSEN et al. v. LEE & SIMMONS, Inc.**

**Nos. 177, 178, Dockets 20873, 20874.**

Circuit Court of Appeals, Second Circuit.

March 30, 1948.

[1] 2 Cir., 169 F. 252.
[2] 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669.
[3] 308 U.S. 295, 60 S.Ct. 238, 247, 84 L.Ed. 281.

FRANK, Circuit Judge, dissenting.

———◇———

Abraham M. Fisch, of New York City (Wilbur Duberstein and Sidney Schiffman, both of New York City, of counsel), for plaintiffs Larsen and others.

Frederick E. Weinberg, of New York City, for plaintiffs Knudsen and others.

Thomas A. McDonald (Richard F. Lenahan, of New York City, and Macklin, Brown, Lenahan & Speer, all of New York City, of counsel), for Wright & Cobb Lighterage Co.

Charles W. Hagen, of New York City, for Lee & Simmons, Inc.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

In the action of Larsen v. Wright & Cobb Lighterage Co. judgment was entered in favor of one of the plaintiffs, McCarthy, in January, 1947, which we affirmed on July 21, 1947.[1] Other plaintiffs in that action stipulated with the defendant that judgment as to them should await the event of judgment as to McCarthy. In the action of Knudsen v. Lee & Simmons, Inc., there were three plaintiffs and judgment was entered in favor of all three in January, 1947, D.C., 68 F.Supp. 538, which we affirmed on July 21, 1947.[2] Both actions were for overtime and liquidated damages under the Fair Labor Standards Act, 29 U.S.C.A., § 201 et seq., and between the date of the argument and our opinion the Portal-to-Portal Act went into effect.[3] On that ground the defendant in each case moved for a rehearing which we denied, but in our mandate we authorized the District Court "to consider and adjudicate any matters that may be presented to it under the Portal-to-Portal Act." The District Court acting on this mandate thereafter granted leave to each defendant to file a supplemental answer setting up the following four defences. First. That "the overtime compensation claimed by plaintiff was not payable pursuant to said contract or any custom or practice, nor was such activity compensable as claimed by plaintiff pursuant to said contract or any custom or practice." Second. That "the method of payment was arrived at after collective bargaining and plaintiff was paid pursuant to said contract in full waiver, release, settlement and compromise of all claims and demands against the defendant under the Fair Labor Standards Act." Third. That "the acts of the defendant * * * were in good faith, in conformity with and in reliance upon administrative regulations, orders, rulings, approvals or interpretations agencies of the United States and on administrative practice or enforcement policy of such agencies." Fourth. That "the acts and omissions of which plaintiff complains were in good faith and defendant had reasonable grounds for believing that its acts or omissions were not a violation of the Fair Labor Standards Act." Thereupon in the action of Larsen v. Wright & Cobb Lighterage Co., McCarthy moved to strike out the answer and for leave to issue execution on his judgment; and Anderson, one of the plaintiffs who had stipulated to await the

---

[1] McCarthy v. Wright & Cobb Lighterage Co., 2 Cir., 163 F.2d 92.

[2] Knudsen et al. v. Lee & Simmons, 2 Cir., 163 F.2d 95.

[3] §§ 251–262, Title 29 U.S.C.A.

judgment as to McCarthy, moved to strike out the answer and for reference to a master to compute his damages. In the action of Knudsen et al. v. Lee & Simmons, Inc., the three plaintiffs who had recovered judgment followed the same course as McCarthy in the other action; and one Larsen, a fourth plaintiff in that action, followed the same course as Anderson in the first. The plaintiffs appealed from the denial of all three orders in each action.

The first, and, we hold, the only, question to be decided is whether we have any jurisdiction over the appeals. We shall confine our discussion to the claims upon which judgments were entered in favor of the plaintiffs, because if the orders are not appealable as to those, a fortiori they are not appealable as to the claims which were to abide the event. In form there can be no doubt that the orders were interlocutory; they left open the question whether the judgment creditors should ever recover anything whatever. Indeed, it has been so uniformly held as not to justify the citation of authorities, that ordinarily an order is not final which leaves in abeyance the authoritative adjudication of the parties' rights. It is true that for over sixty years there has been an exception to this when the lower court sets aside a judgment after it has lost jurisdiction of the cause;[4] but that is only a corollary of the much more ancient doctrine that "on every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes."[5] It would follow from this exception that, had the District Court in the case at bar acted without jurisdiction, we should in our turn have jurisdiction to reverse its order, and it would be our duty to do so.

However, the judge certainly did have jurisdiction in the usual sense because we expressly sent the cause back to him and directed him to consider the effect of the new statute. If, then, the orders are appealable at all, it must be because the Portal-to-Portal Act, being unconstitutional, he had no jurisdiction except to declare that fact, and he had no warrant for trying out those issues which the supplemental answers raised, and on which Congress has made the incidence of the Act depend. That would necessitate our holding that, whenever a judge refused to declare a statute unconstitutional, any order which he might make would be non coram judice, if the statute was in fact unconstitutional. The only reasoning which could support this would be that an unconstitutional statute is a vain gesture, on which no judicial action can be based. On the contrary, if a court has held constitutional a statute which later turns out to be unconstitutional, its judgment is as immune from attack as any other of its judgments;[6] and that is utterly inconsistent with the notion that an unconstitutional statute is a nullity, for a judgment is always open to attack, when the court lacks jurisdiction over the subject matter.

It would scarcely be extravagant to say that there could be no completer inversion of the proper approach to the decision of the constitutionality of a statute. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality * * * unless such adjudication is unavoidable."[7] In the case at bar, no one can now know whether the defendants will be able to bring themselves within the conditions imposed by the statute itself; and if they fail to do so,

[4] Phillips v. Negley, 117 U.S. 665, 6 S. Ct. 901, 29 L.Ed. 1013; Hamilton Coal Co. v. Watts, 2 Cir., 232 F. 832; Board of Supervisors of Rockland County v. Knickerbocker Ice Co., 2 Cir., 80 F.2d 248, 250; City of Manning v. German Ins. Co., 8 Cir., 107 F. 52, 54; Nelson v. Meehan, 9 Cir., 155 F. 1, 3, 12 L.R.A., N.S., 374; Greyerbiehl v. Hughes Electric Co., 8 Cir., 294 F. 802, 807.

[5] Mansfield, Coldwater & L. M. Railway Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462; Stratton v. St. Louis S. W. Ry. Co., 282 U.S. 10, 16, 51 S.Ct. 8, 75 L.Ed. 135; Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; Clark v. Paul Gray, Inc., 306 U.S. 583, 588, 59 S.Ct. 744, 83 L. Ed. 1001; Hock v. 250 Northern Ave. Corporation, 2 Cir., 142 F.2d 435.

[6] Stoll v. Gottlieb, 305 U.S. 165, 59 S. Ct. 134, 83 L.Ed. 104; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329.

[7] Spector Motor Co. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101.

the question will never arise. Nor indeed is the question itself free from all doubt. It is one thing to cancel rights on the faith of whose creation and protection the parties have shaped their conduct; but it is toto coelo another thing to say that those "vested rights" were similarly immune which the Portal-to-Portal Act abrogated, limited in its scope as it is by §§ 2, 9 and 11.[8]

We concede that what we said in American Brake Shoe & Foundry Co. v. New York Railways Co.[9] supports the appealability of the orders at bar; for it proceeded upon the theory that "if the petitioners" (the appellants) "have a right of immediate payment, the orders" (which denied immediate payment and sent the claims to an accounting) "must be regarded as a determination and denial of a substantial right" (pages 527, 528 of 282 F.). However, the ground so stated was clearly untenable, for it would make appealable every order which refused to strike out a defence pleaded to the claim; all such orders defeat the plaintiffs' "right of immediate payment," and if they are wrong, there is "no adequate relief." So far as the decision must rest upon that ground, we overrule it. We need not say whether it may not have been right because the district court had decided most of the issues and had sent to a master only the computation of rent and taxes. Ordinarily, it is true, even such a judgment is also not appealable, for it is not considered final,[10] although the question is not free from doubt.[11] Be that as it may, it does not concern us here, for, as we have said, the supplemental answers raised issues which went to the plaintiffs' right to recover anything whatever; they were not confined to a computation of damages.

Appeals dismissed.

FRANK, Circuit Judge (dissenting).

Suppose that, before these appeals, it had been decided authoritatively in some other case that the Portal-to-Portal Act is unconstitutional in so far as it purports to create new defenses (of the sort now pleaded) to causes of action existing before the passage of that Act. Then clearly we would have jurisdiction of these appeals. For then it would appear that, in ordering the judgments to be opened after expiration of the term in which they were entered, the judge here exceeded his jurisdiction, and such an order in excess of jurisdiction is appealable, as my colleagues concede; see Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; Nelson v. Meehan, 9 Cir., 155 F. 1, 12 L.R.A.,N.S., 374; Hamilton Coal Co. v. Watts, 2 Cir., 232 F. 832; Board of Supervisors of Rockland County v. Knickerbocker Ice Co., 2 Cir., 80 F.2d 248, 250; City of Manning v. German Ins. Co., 8 Cir., 107 F. 52, 54.

Appellants urge, therefore, that we should consider the Act's validity and, if we hold it invalid, should entertain jurisdiction of the appeals, because then it will be obvious that the order of the district judge is appealable. My colleagues answer this suggestion as follows: No one now knows, or will know until after the trials under defendants' new pleadings, whether defendants will prove their new defenses created by the new statute; if defendants fail to do so, the issue of constitutionality will be avoided; and, say my colleagues, we must here thus avoid that issue because of the doctrine that a court must never consider a statute's validity when such an adjudication is avoidable.

I think, however, my colleagues interpret that doctrine too sweepingly. Were their interpretation correct, a court would never deal with the constitutionality of a statute until after a trial, since, if the party relying on the statute were to lose at trial, it would be unnecessary to determine its validity. But, some seven months ago, the Supreme Court decided an issue of statutory validity when that issue was raised in limine. See United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 1541. There the Court recognized

[8] §§ 252, 258, 260, Title 29, U.S.C.A.

[9] 2 Cir., 282 F. 523.

[10] Keystone Manganese & Iron Co. v. Martin, 132 U.S. 91, 10 S.Ct. 32, 33 L. Ed. 275; Winters v. Ethell, 132 U.S. 207, 10 S.Ct. 56, 33 L.Ed. 339; Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L. Ed. 1169; George v. Victor Talking Machine Co., 293 U.S. 377, 55 S.Ct. 229, 79 L.Ed. 439; Deckert v. Independence Shares Corporation, 311 U.S. 282, 61 S. Ct. 229, 85 L.Ed. 189.

[11] McGourkey v. Toledo & Ohio Central Ry. Co., 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed. 1079.

**324**

the doctrine to which my colleagues refer, but refused to apply it, because, the Court said, the motion to dismiss the criminal information, before trial, "squarely raises the question of·whether the section invoked in the indictment is void in toto, barring all further actions under it, in this, and every other case," and because "no refinement or clarification of issues which we can reasonably anticipate would bring into better focus the question" of constitutionality. If my colleagues' view had been accepted in the Petrillo case, the Court would have refused to deal with that question until Petrillo had been tried, for if he had been acquitted, that question would have vanished from the case.

I think the present appeals come within the Petrillo ruling. The question of statutory validity here—i. e., whether Congress by a statute may validly authorize new, substantive defenses (such as those here pleaded) to vested rights which consist of causes of actions fully matured before enactment of the statute—can be answered from the face of the statute.[1] There is no need here, as there was in Borden's Farm Products Company v. Baldwin, 293 U.S. 194, 210, 55 S.Ct. 187, 192, 79 L.Ed. 281, to bring before us, by evidence at a trial, "the particular economic facts of a given trade or industry," "facts relating to particular commercial or industrial conditions." The facts which trials here will bring out will not aid in determining the validity of the Act.

I share with my colleagues a reluctance to strike down a statute, and therefore a reluctance to decide a case in the course of which perhaps I may have to join in doing so. But distaste for such a task should not lead us to compel plaintiffs to undertake long and expensive new trials, in support of judgments they have already obtained by earlier trials, before we decide whether those new trials will be needless, as they will be if the statute is unconstitutional. Accordingly, I think we should not dismiss these appeals without answering the constitutional question.[2]

[1] See Smith v. Cahoon, 283 U.S. 553, 567, 51 S.Ct. 582, 75 L.Ed. 1264; cited with approval in Borden's Farm Products Company v. Baldwin, 293 U.S. 194, 210, 55 S.Ct. 187, 79 L.Ed. 281.

[2] We should not be deterred·by the fact that we will thereby telescope the decisions as to appealability and as to the merits of the appeals.